

## GOULD & BERG, LLP
*attorneys at law*

Jane Bilus Gould
Kim Patricia Berg*
*also admitted in New Jersey

222 Bloomingdale Road
White Plains, New York 10605
*phone* 914-397-1050  *fax* 914-397-1051
*web* www.gouldberglaw.com

February 8, 2016

**Via ECF**

Hon. Judith C. McCarthy
United States Magistrate Judge
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

Re:     **Payson et al v. Board of Education Mount Pleasant Cottage School USFD et al
        14 Civ. 9696 (NSR) (JCM)**

Dear Judge McCarthy:

        Our office represents the Plaintiffs in the above captioned matter.

        Pursuant to an Order issued at the most recent conference before your Honor, I am
forwarding herewith our proposed First Amended Complaint.

                                        Very truly yours,

                                        Jane Bilus Gould

JBG: jk
Enclosure

cc:     Jennaydra Clunis, Esq. (via ECF and regular mail w/ enclosures)
        Goldberg Segalla

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
DIANE PAYSON and LAURIE TYLER,


                              Plaintiff,                    14 Civ. 9696 (NSR) (JCM)


-against-                                                   **FIRST**
                                                           **AMENDED COMPLAINT**
                                                           **Jury Trial Demanded**

BOARD OF EDUCATION OF MOUNT
PLEASANT COTTAGE SCHOOL, USFD;
JAMES GAUDETTE, SUPERINTENDENT
OF MOUNT PLEASANT COTTAGE SCHOOL
USFD, IN HIS OFFICIAL AND INDIVIDUAL
CAPACITY; MONICA BARON, PRINCIPAL OF
MOUNT PLEASANT COTTAGE SCHOOL, IN
HER OFFICIAL AND INDIVIDUAL CAPACITY,

                              Defendants.
--------------------------------------------------------X

     Plaintiffs DIANE PAYSON and LAURIE TYLER, by their attorneys, GOULD & BERG,

LLP as and for their First Amended Complaint, respectfully allege and as follows:

### PRELIMINARY STATEMENT

     1.  Plaintiffs bring this action seeking relief pursuant to 42 U.S.C. Section 1983, for

Defendants' violations of their rights to engage in speech on matters of public concern and their

associational rights to engage in Union-related activities, all in violation of the First Amendment

to the Constitution of the United States, their rights to be free from retaliation for having

advocated on behalf of Special Education and emotionally disturbed students, pursuant to the

anti-retaliation provisions of 29 U.S.C. Section 794, and for reporting violations of law and

regulations affecting public health and safety, in violation of Section 75-b of the New York State

Civil Service Law.

     2.  The conduct complained of in this action involves, inter alia, harassment and retaliation

for speech on matters of public concern, for engaging in Union- related activities, for advocating

on behalf of Special Education and emotionally disturbed students and for "whistleblowing" or

reporting violations of law and regulations constituting improper governmental activity, in the

form of forced medical leave, demotions and/or unfavorable and punitive assignments, reduction

of a full-time to a .15 position resulting in reduction of wages (and potentially retirement income),

and termination of employment.

3.   Plaintiffs seek compensatory and punitive damages to the extent allowable by law,

and other appropriate legal and equitable relief pursuant to federal and state law.

## JURISDICTION AND VENUE

4.   This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §

1331, as this matter involves federal questions.

5.   This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28

U.S.C. § 1367(a).

6.   Venue properly lies in the United States District Court for the Southern District of

New York, pursuant to 28 U.S.C. § 1391, because the primary unlawful discriminatory conduct

occurred at a school within the County of Westchester in the State of New York and Plaintiffs

are residents of the County of Westchester and Putnam, respectively.

## THE PARTIES

7.   At all times relevant hereto, Plaintiff, Diane Payson, was, and continues to be, a resident

of the County of Westchester, State of New York.

8.   At all times relevant hereto Plaintiff, Laurie Tyler, was, and continues to be, a resident

of the County of Putnam, State of New York.

9.   Mount Pleasant Cottage School Union Free School District ("MPCS" or the "District")

is a Special Act School District, created under and existing by virtue of the laws of the State of New York and is located in Pleasantville, Westchester County, New York.

10.  The District is comprised of two schools serving special education and emotionally disturbed students most of whom live and attend school on the same campus.

11.  The Defendant Board of Education is the governing body of the District and is the policy-making body of the District.

12.  At all times relevant hereto, Defendant James Gaudette was, and continues to be, the Superintendent of the Mount Pleasant Cottage School U.F.S.D. and as such had and has enormous influence on the Board's decision-making process at it relates to forced medical leaves and reduction and/or termination and/or elimination of positions within the District.

13.  At all times relevant hereto, Defendant Monica Baron was a principal employed by the Mount Pleasant Cottage School U.F.S.D.

14.  At all times relevant hereto, Plaintiffs were or are "public employees" of the District and Board of Education within the meaning of New York State Civil Service Law § 75-b(l)(b).

15.  At all times relevant hereto, Defendant Mount Pleasant Cottage School U.F.S.D. and/or its Board of Education is/are public employers within the meaning of New York State Civil Service Law § 75-b (l) (a).

16.  At all times relevant hereto, Defendant Mount Pleasant Cottage School U.F.S.D. was an employer within the meaning of 29 U.S.C. §§ 630.

**NOTICES OF CLAIM**

17. As related to state law claims asserted herein Plaintiff Diane Payson duly served and filed a Notice of Claim on or about July 11, 2014.

18. More than 90 days have passed since the filing of the Notice of Claim and the claim has not been adjusted.

19. As related to state law claims asserted herein Plaintiff Laurie Tyler duly served and filed a Notice of Claim in or about July 2014.

20. More than 90 days have passed since the filing of the Notice of Claim and the claim has not been adjusted.

## ACTIONS UNDER COLOR OF LAW

20(a) At all times relevant hereto, Defendants were acting under color of law.

## THE FACTS AS THEY RELATE TO PLAINITFF DIANE PAYSON

21. Plaintiff DIANE PAYSON was first employed as school guidance counselor at the Mount Pleasant Cottage School on April 29, 2003 and was tenured on September 18, 2006.

22. In or about September 2011, Plaintiff PAYSON was removed from her position as school counselor for Mount Pleasant Cottage School in which she performed IEP mandated counseling and was assigned by Defendant GAUDETTE to serve as Guidance Counselor for the entire District and to perform traditional guidance counselor duties. She did not receive additional compensation for being assigned to both schools.

23. In or about October 2012, Plaintiff PAYSON was given further added duties of coordinating the Ease of Entry Program for new students and District Level Testing Coordinator (which required additional training), without receiving additional compensation for these additional duties.

24. In or about October 2012, Plaintiff PAYSON was then moved to Cottage School as a school guidance counselor for that school only, and still retained the uncompensated added duties of the Ease of Entry Program for new students and District Level Testing Coordinator.

25. In or about November 2012, Plaintiff PAYSON advocated to Defendant GAUDETTE on behalf of General Equivalency Diploma (GED) Special Education students and/or emotionally disturbed students who were being improperly accepted into the program on the basis that they were not a proper fit for the program.

26.   On or about August 31, 2013, Defendant GAUDETTE nominated Plaintiff PAYSON, along with an untenured male teacher at the school, for an Administrative Internship Program at Bank Street College.  The goal of Ms. Payson's participation in the program was to give her the experience by which she could become a school administrator, thereby increasing her responsibilities and compensation.

27.   Thereafter, Plaintiff PAYSON worked on utilizing the student database and computerizing student scheduling, in addition to other numerous internship projects. Her normal duties were increased greatly, instead of decreased, while the other instructor's duties were decreased so he could concentrate on internship duties.

28.   In or about September 2013, Plaintiff PAYSON advocated to Defendant GAUDETTE on behalf of Special Education and/or emotionally disturbed students with severe psychiatric conditions against moving those students from a self-contained class to rotating classes. Plaintiff PAYSON also advocated to Defendant GAUDETTE against the reassignment of those students to school counselors from each class, to a random system which would not allow for group counseling for students with psychiatric and behavioral issues.

29.   In or about October 2013, Plaintiff PAYSON advocated to Defendant GAUDETTE against moving a Special Education and/or emotionally disturbed student with behavioral problems from the Alternate Assessed Program for severely low functioning students to the Local Diploma Bound program. The move was made by administration anyway, and the student could not academically manage the change, and therefore subsequently stopped going to school

and was quickly discharged from the residential program.

30.  In or about November 2013, students were being promoted without notification to Plaintiff PAYSON (who was assigned to do their class scheduling) and placed in the wrong classes that were too difficult for them.  PAYSON advocated on behalf of these Special Education and/or emotionally disturbed students in an attempt to address the many inaccuracies and inappropriate grade level placements to school administration, but her concerns were ignored.

31.  On or about January 2014, Plaintiff PAYSON advocated to Defendant GAUDETTE on behalf of a Special Education student who was promoted late to the 9th grade curriculum after missing half of the 9th grade year.

32.  On or about February 2014, Plaintiff PAYSON was given the added task of correcting a state report that had previously been done by clerical staff. Plaintiff PAYSON was purposely given minimal training on how to correct the report despite requesting this training of Ms. Virginia Johnson, technology specialist, thereby undermining her ability to perform this task.

33.  In February 2014, at a meeting of the Mount Pleasant Cottage School Teachers Association (the "Union") Plaintiff PAYSON advocated strongly against withdrawing a union grievance.

34.  Defendant BARON threatened that the grievance was the reason she may "cut" all teaching assistants.

35.  On or about March 14, 2014, in conjunction with her Union activities, Plaintiff PAYSON advocated strongly in favor of obtaining a copy of Defendant GAUDETTE's contract with the Defendant Board to better improve the school climate.

36.  On or about March 14, 2014, Plaintiff PAYSON advocated to Defendant GAUDETTE on behalf of a Special Education student who was promoted from 6th to 8th grade

to the student's detriment.

37.   On or about March 14, 2014, in retaliation for the foregoing Union activities and advocacy on behalf of a Special Education student, Plaintiff PAYSON was assigned by administration another added task of data entry related to testing. Plaintiff PAYSON was purposefully given no training on how to complete the data entry despite requesting this training, thereby undermining her ability to perform the assigned task.

38.   On or about March 17, 2014, Plaintiff PAYSON wrote an email to Defendant GAUDETTE listing all the extra duties Plaintiff PAYSON had been asked to perform. Plaintiff PAYSON noted that her clerical staff was terminated and asked for help prioritizing her numerous duties.

39.   On or about March 26, 2014, in retaliation for the foregoing protected activities of advocating on behalf of several Special Education and/or emotionally disturbed students and/or her Union activities, Plaintiff PAYSON was removed by Defendant GAUDETTE from the position of District Test Coordinator.

40.   On or about March 26, 2014, in retaliation for the foregoing protected activities of advocating on behalf of several Special Education and/or emotionally disturbed students and/or her Union-related activities, Defendant BARON told Plaintiff PAYSON that she could forget about the building level internship and that it was "gone". Plaintiff PAYSON had already completed 186 hours of the 400 hours required for the Administrative Program.

41.   In March 2014, Plaintiff PAYSON communicated on matters of public concern, by filing a complaint with the New York State Office of the Teaching Professions against Defendant GAUDETTE and Defendant principal MONICA BARON.

42.   On April 2, 2014, in retaliation for advocating for Special Education and/or

emotionally disturbed students as set forth above, and/or her union activities and/or for speaking out on matters of public concern by filing the above-described complaint with the New York State Office of the Professions, Defendant BARON, upon information and belief at the behest of Defendant GAUDETTE, removed from PAYSON 85% of her job duties.

43. In or about April 2014, Plaintiff PAYSON, in conjunction with her union activities, met with members of the school climate committee due to low morale and they prepared and distributed a school climate survey on or about April 9, 2014. Defendant GAUDETTE then sent Plaintiff PAYSON an email accusing Plaintiff PAYSON of alluding to "some type of conspiracy" because Plaintiff PAYSON had copied her union legal advisor on an email.

44. On or about April 29, 2014, in retaliation for the foregoing activities of advocating on behalf of Special Education and/or emotionally disturbed students, speaking out on matters of public concern, and her union-related activities, Plaintiff PAYSON received an email from Defendant GAUDETTE stating that he would no longer support her for the district level internship, though Plaintiff PAYSON had already completed 186 hours of the 400 hours required for the Administrative Internship Program.

45. On or about May 1, 2014, Arthur Schwartz, Esq. attorney for Advocates for Justice, informed the Defendant Board of Defendant GAUDETTE'S retaliatory actions against Plaintiff PAYSON.

46. In retaliation for the foregoing, Plaintiff PAYSON was thereafter locked out of essential databases needed to do her job, was wrongly accused of forgery and denied paid working days in the summer.

47. Some time prior to June 2, 2014, Plaintiff PAYSON spoke out on a matter of public concern, and about violations of Education Law and regulations as improper government activity

and advocated on behalf of Special Education students by filing a complaint against Defendant GAUDETTE with the New York State Department of Education (NYSED) about changing class size without following state Education Law and proper procedure as it pertains to Special Education students. This complaint was received by NYSED on June 2, 2014 and was eventually investigated and sustained by NYSED.

48.   In retaliation for the foregoing speaking out on matters of public concern and regarding violations of law and regulations constituting improper government activity, and advocating on behalf of Special Education and/or emotionally disturbed students, by letter dated May 29, 2014, Plaintiff PAYSON was advised by Defendant GAUDETE that the Board of Education had reduced her full time position as School Counselor to a .15 full time position, effective June 30, 2014.

49.   Defendant GAUDETTE recommended the foregoing reduction to the Board of Education and had enormous influence in persuading the Board to accept that recommendation.

50.  Some time prior to June 11, 2014, Plaintiff PAYSON spoke out on matters of public concern and advocated on behalf of Special Education and/or emotionally disturbed students by filing another complaint with NYSED which she advised NYSED that the District violated federal and state requirements pertaining to the education of students with disabilities, ages three-to twenty-one. This complaint was received by NYSED on June 11, 2014 and was investigated and sustained by NYSED.

51.   Defendant GAUDETTE was aware of at least the first of the foregoing complaints filed by Ms. PAYSON at least as early as June 23, 2014.

52.   After her demotion to part-time status, Plaintiff PAYSON was told that she would receive "extra training" regarding state reporting by Principal BARON but no such training ever occurred and Plaintiff was then exposed to disparate supervision by other staff.

9

53.  On or about September 9, 2014, Plaintiff PAYSON attended a conference before the New York State Public Employment Relations Board (PERB) after filing an improper practice complaint with PERB against the District, which conference Defendant GAUDETTE attended.

54.  The very next day, on or about September 10, 2014 Defendant BARON, upon information and belief at the behest of Defendant GAUDETTE, directed Plaintiff PAYSON to relinquish her set of school keys to the faculty room and bathroom. Plaintiff was not allowed to access her files or her email account and had no access to a computer or telephone.

55.  On or about September 10, 2014, in retaliation for the foregoing activities in speaking out on a matter of public concern, advocating on behalf of Special Education and/or emotionally disturbed students and bringing matters of violations of State and federal law constituting improper governmental practices to NYSED and PERB, Plaintiff was given an undeserved negative evaluation for the previous 2013-14 school year.

56.  On or about September 17, 2014, Plaintiff DIANE PAYSON filed a complaint with the New York State Division of Human Rights (SDHR) based on gender/sex discrimination in regard to removal of her administrative internship with the school, when her male colleague was allowed to continue the internship at the school.

57.  Upon information and belief, Defendants learned on September 22, 2014 that Plaintiff Payson had filed that SDHR complaint.

58.  On or about September 22, 2014, Plaintiff PAYSON received a letter from Defendant GAUDETTE indicating that he would ask the Board of Education to eliminate her .15 position and the Board accepted Defendant GAUDETTE's recommendation.

59.  Defendant GAUDETTE's foregoing recommendation to eliminate her position was made in retaliation for PAYSON'S speaking out on matters of public concern, advocating on

behalf of Special Education and/or emotionally disturbed students and reporting violations of state and federal law constituting improper governmental practice.

60. Based upon Defendant GAUDETTE's recommendation which was extremely influential with respect to the Board's action, the Board of Education eliminated Plaintiff PAYSON's .15 position and her employment was terminated, effective September 23, 2014.

## THE FACTS AS THEY RELATE TO PLAINTIFF LAURIE TYLER

61. Plaintiff LAURIE TYLER was first employed as a special education teacher at Mount Pleasant Cottage School in or about September 1996 and was tenured in or about September 1999.

62. In or about November 2011, Plaintiff TYLER advocated to Defendant Superintendent GAUDETTE on behalf of Special Education students that a particular counselor was not seeing those students as mandated by law.

63. Also in or about November 2011, Plaintiff TYLER advocated for Special Education students with respect to problems arising out of an assistant's failure to set appropriate boundary lines with students.

64. In or about January 2012, Plaintiff TYLER advocated on behalf of a Special Education student who was acting dangerously and violently and whom the District sought to move to a less restrictive environment.

65. On or about September 2012, Plaintiff TYLER was elected Vice President of Mount Pleasant Cottage School Teacher's Union and was a member of the Grievance Committee as of September 2012. She had also been a member of the union executive committee for a number of years.

66. In or about December 2012, Plaintiff TYLER brought to Defendant GAUDETTE's

11

attention issues regarding the District's failure to comply with state and federal requirements regarding the assignment of a 1:1 worker to a Special Education student and advocated for special education and/or emotionally disturbed students against movement of students into classes that were not appropriate for them.

67.   Defendant GAUDETTE responded that the District was a "very resource scarce environment and denied that it was not in compliance with class size regulations.

68.   On October 26, 2013, Ms. TYLER advocated to Defendant BARON on behalf of a Special Education student who was acting act and severely violent against placing the student in a less restrictive environment.

69.   Notwithstanding the foregoing advocacy by Plaintiff TYLER, the student was moved, was subsequently arrested for sexual assault on another student, was later involved in approximately 15 violent episodes, was on many long- term suspensions from school and was subsequently incarcerated.

70.   On or about December 6, 2013, in her capacity as Union Vice President, Plaintiff TYLER sent an email to the Union President questioning whether a posted paid professional development position could be assigned to teachers as "extra" unpaid work in between professional development meetings.

71.   Defendant GAUDETTE was "cc'd" on this email.

72.   In retaliation for the foregoing Union-related activity, on or about December 17, 2013, upon information and belief at the behest of Defendant GAUDETTE, Defendant BARON informed Ms. TYLER that she would be receiving a letter from GAUDETTE [falsely stating] that she was not fulfilling her professional development duties.

73.   When Ms. TYLER offered to show Defendant GAUDETTE her completed

professional development work, the offer was declined and when an assistant attempted to validate Ms. TYLER's statement that the work had been completed, Defendant GAUDETTE threatened the assistant, and told her "I suggest you stay out of this," "You don't know what you're getting yourself into," and "You're not in trouble . . . yet."

74.   On December 20, 2013, in retaliation for the foregoing Union-related activities, Defendant GAUDETTE called Ms. TYLER into a meeting with a Union representative, where she was not permitted to speak and was given a letter of advisement to be placed in her file.

75.   Another teacher who was also working on professional development tasks separately, as was Ms. TYLER, but who was not involved with the Union was not reprimanded and nothing was placed in his file.

76.   On or about February 4, 2014, Plaintiff TYLER advocated on behalf of a twelve-year old truant Special Education student who was engaging in unsafe behavior both in and outside of school. She discussed with the residential childcare counselor of where the child resides that perhaps the New York State Justice Center should be contacted regarding the student. Both parties discussed the possibility of contacting the Justice Center because of growing concern over the safety of the child. The Justice Center's purpose is to protect the health, safety, and dignity of all people with special needs and disabilities through advocacy of their civil rights, prevention of mistreatment, and investigation of all allegations of abuse and neglect so that appropriate actions are taken.

77.   Upon information and belief, Ms. TYLER's advocacy was relayed to Defendant GAUDETTE.

78.   On February 6, 2014, in retaliation for advocating for the truant Special Education student identified above, Plaintiff TYLER was called into Defendant GAUDETTE's office for a

disciplinary meeting and told she was adversarial with the cottage staff, which Plaintiff TYLER denied. Defendant GAUDETTE then directed Plaintiff TYLER on reporting protocol and Plaintiff TYLER, who is a mandated reporter, informed GAUDETTE that it was not in line with the state's policies for mandated reporting.

79.   During that meeting, Defendant JAMES GAUDETTE stated that if a particular childcare worker had called the Justice Center, her job would be jeopardy.

80.   On February 10, 2014, in retaliation for her expression on a matter of public concern and for bringing to GAUDETTE's attention violations of law with respect to his directive regarding reporting to the Justice Center, GAUDETTE gave Plaintiff TYLER an advisory letter stating that she was antagonistic towards the residential cottage staff and was failing to complete her professional duties. She was banned from the residential cottage and told not to discuss student's concerns with the staff, to the detriment of her students.

81.   On February 11, 2014, the Union filed a Stage 2 grievance against Defendant GAUDETTE regarding a contract violation, which if founded, would require the District to pay all Union members two days' pay.

82.   On or about February 24, 2014, Defendant GAUDETTE called a faculty meeting, advised that the District was in a budget crisis and that in order to pay back the snow days as requested in the grievance mentioned above, he was going to have to make cuts, possibly laying off people.

83.   Defendant BARON advised a number of people that if the foregoing grievance was dropped, jobs would be saved.

84.   In the February 24, 2014 faculty meeting, GAUDETTE stated that calling the Justice Center, which could make recommendations that could be costly, was expensive and he

indicated that an ongoing investigation was costing the District twenty-thousand dollars in attorney's fees.

85.   In the February 24, 2014 staff meeting, Defendant GAUDETTE mentioned the names of individuals then under investigation, and stated that the money used to investigate and meet directives given by the Justice Center might have to come out of the budget in the form of jobs.

86.   On March 3, 2014, Plaintiff TYLER, in conjunction with her work for the Union, supported a pregnant teacher, who was in medical distress, with filling out a Workers Compensation form. Plaintiff TYLER was not privy to what the form said.  However, the teacher advised Ms. TYLER that she had stated on the form that Defendant GAUDETTE had harassed her.

87.   On March 5, 2014, in retaliation for supporting and assisting this teacher in conjunction with her work for the Union, Plaintiff TYLER was given a sealed confidential letter from Defendant BARON stating she (MS. TYLER) was being investigated for harassment.

88.  Plaintiff TYLER was given no information as to whom or what this charge involved. Plaintiff TYLER was directed to have no contact with any counseling staff, again impacting her ability to assist her students. As a direct result, Plaintiff TYLER was restricted from attending a meeting addressing severe safety concerns regarding a student in her class.

89.   On or about March 13, 2014, in conjunction with her work on behalf of the Union, Plaintiff TYLER attended an investigatory hearing held by Defendant GAUDETTE and advocated on the particular teacher's behalf as the teacher's union representative.

90.   In retaliation for her advocacy as the teacher's Union representative at the meeting

and other union activities, Plaintiff TYLER's class was suddenly disbanded that very same afternoon.

91.   Thereafter, in retaliation for the foregoing Union advocacy, TYLER was left alone in her room with no students for seven school days. Plaintiff was then assigned to work with the most serious behavioral students (violent or dangerous) who were on long-term suspension, many of them for dangerous behavior.

92. In further retaliation for her Union-related advocacy, from March 19-March 27, 2014, TYLER was isolated in her classroom without and assignment and with no direction or communication from an administrator.

93.   On or about April 9, 2014, Plaintiff TYLER initiated and organized with NYSUT (New York State United Teachers) a school climate survey with a union subcommittee because of ongoing complaints from staff regarding actions by the administration.

94.   Defendant GAUDETTE wrote a memo strongly condemning the implementation of this survey and attempted to halt its distribution.

95.   On or about April 11, 2014, in retaliation for the foregoing Union-related advocacy and her union-related advocacy on behalf of a teacher, , Plaintiff TYLER was called in for a disciplinary meeting with Defendant GAUDETTE and was told to submit to an involuntary psychiatric evaluation pursuant to New York State Education Law Section 913. When questioned as to reasons for this evaluation, Defendant GAUDETTE provided Plaintiff TYLER with vague and unspecified allegations.

96.  On or about May 1, 2014, Arthur Schwartz, Esq. attorney for Advocates for Justice, informed the Defendant Board of Defendant GAUDETTE'S retaliatory actions against Plaintiff TYLER. He also advised that Ms. TYLER would not agree to submit to any sort of

psychological evaluation unless directed to do so by the Board of Education.

97.  On May 6, 2014, Ms. Tyler advocated in writing on behalf of a Special Education student to a school counselor regarding a child who had become inebriated and had had sexual relations with her sister's boyfriend. A copy of this writing was also "cc'd" to Defendants GAUDETTE and BARON.

98.  Ms. TYLER was instructed at that time to follow protocol that was not consistent with New York State Mandated Reporter Guidelines.

99. On May 6, 2014, in retaliation for the foregoing Union-related activities and advocacy on behalf of a Special Education student, Defendant GAUDETTE placed Ms. TYLER on involuntary administrative leave.

100.  Defendant GAUDETTE ordered Plaintiff TYLER to see Dr. Levin (a forensic psychiatrist) for a psychiatric evaluation where she was directed to sign a non-confidentiality agreement by the District.

101.  Dr. Levin was unable to schedule an appointment for Ms. TYLER's evaluation for more than two months or until July 11, 2014.

102.  Against proper practice and protocols, Defendant GAUDETTE gave Dr. Levin sensitive "prior information" about Plaintiff TYLER in order to taint Dr. Levin's opinion of Plaintiff. Plaintiff TYLER was not allowed to see that information provided to Dr. Levin, although Dr. Levin referred to it often during the examination. Dr. Levin was invasive in his line of questioning to determine Plaintiff TYLER's fitness for duty.

103.  In a letter dated July 29, 2014, from Defendant GAUDETTE, and which contained the psychiatric evaluation, Plaintiff TYLER was told she had an unspecified personality disorder and told she was "unfit for duty." In a meeting to determine when the Plaintiff TYLER

would be allowed to return to work, she was threatened by Defendant GAUDETTE, that if she did not take medical leave, she would face Section 3020-a disciplinary proceedings under New York State Education Law, which could result in her termination. This statement was further reiterated in a letter to her from Defendant GAUDETTE, dated October 30, 2014.

104.  Plaintiff TYLER had contrary evaluations from a psychologist, a psychiatrist, and a physician, stating that she is physically and mentally stable and fit for work. These medical professionals were of the opinion that Plaintiff TYLER had been subjected to an ongoing "hostile and apparently harassing environment" prior to agreeing to take a medical leave.

105. Ms. Tyler was on paid administrative leave until on or about September 2014.

106.  When in or about September 2014, TYLER discussed with GAUDETTE her return to work, GAUDETTE advised her that she would be returning under harsh circumstances not experienced by other teachers with a plan under which she would undergo oppressive supervision and would not be returned to her regular class but would be placed in the Respite program, with the most dangerous and violent students in the District with no security.

107.   Based upon consultation with her treating professionals who advised her that working under such psychologically hostile circumstances would be detrimental to her health, she was forced to take a medical leave of absence, commencing in September 2014, thereby utilizing her sick days in order to be paid.

107(a).  When in April 2015, TYLER advised GAUDETTE that she was ready to return to work and would no longer be utilizing her sick time, GAUDETTE again engaged in retaliatory action by informing her that she must be cleared for duty by, inter alia Dr. Levin, and that until she was cleared by Dr. Levin, (who could not see her until July 2015) and she could either use her sick time or be placed on paid administrative leave, whereupon he would present a resolution

to the Board of Education authorizing commencement of 3020- disciplinary charges against her, seeking the termination of her employment.

107(b).  After being cleared by Dr. Levin, Ms. TYLER returned to work in September 2015 and has been assigned to the Respite program described above since that time.

### AS AND FOR A FIRST CLAIM ON BEHALF OF DIANE PAYSON: RETALIATION IN VIOLATION OF THE REHABILITATION ACT, 29 U.S.C §Section 794 et seq.

108.  Plaintiff PAYSON repeats and realleges Paragraphs 1-58 above as though set forth at length herein.

109.  PAYSON engaged in activity which is protected pursuant to the terms of the Rehabilitation Act, 29 U.S.C. §794 et seq.

110. By reducing and then eliminating her position in retaliation for her protected activity, Defendants took adverse action against Plaintiff PAYSON in such a way as to deter an ordinary person from exercising her rights under the Act.

111. By reason of the foregoing, Plaintiff has sustained damages in the form of lost back pay, front pay, decreased retirement and other benefits, damage to reputation, pain, suffering and mental anguish.

112.  By reason of the foregoing Plaintiff has sustained damages in an amount to be determined at trial but in no event less than $2,500,000.00

### AS AND FOR A SECOND CLAIM ON BEHALF OF DIANE PAYSON:

### VIOLATION OF FIRST AMENDMENT RIGHT TO SPEAK OUT ON MATTERS OF PUBLIC CONCERN, PURSUANT TO 42 U.S.C. § 1983

113.  Plaintiff PAYSON repeats and realleges Paragraphs 1-58 and 105-109 as though set forth at length herein.

114.  By reason of the foregoing, Defendants have violated Plaintiff PAYSON's First

Amendment right to speak out on matters of public concern.

115.  By reason of the foregoing, Plaintiff PAYSON has sustained damages in the form of lost back pay, front pay, decreased retirement and other benefits, damage to reputation, pain, suffering and mental anguish.

116.  By reason of the foregoing Plaintiff PAYSON has sustained damages in an amount to be determined at trial but in no event less than $2,500,000.00

### AS AND FOR A THIRD CLAIM ON BEHALF OF DIANE PAYSON:

### VIOLATION OF FIRST AMENDMENT RIGHT TO ASSOCIATION WITH UNION AND ADVOCACY ON BEHALF OF UNION AND ITS MEMBERS

117.  Plaintiff PAYSON repeats and realleges Paragraphs 1-58 and 105-113 as though set forth at length herein.

118.  By reason of the foregoing, Defendants have violated Plaintiff PAYSON's First Amendment right to association with a Union to advocate on behalf of its members.

119.  By reason of the foregoing, Plaintiff PAYSON has sustained damages in the form of lost back pay, front pay, decreased retirement and other benefits, damage to reputation, pain, suffering and mental anguish.

120.  By reason of the foregoing Plaintiff PAYSON has sustained damages in an amount to be determined at trial but in no event less than $2,500,000.00

### AS AND FOR A FOURTH CLAIM ON BEHALF OF DIANE PAYSON:

### RETALIATION IN VIOLATION OF SECTION 75-b OF THE CIVIL SERVICE LAW

121.  Plaintiff PAYSON repeats and realleges Paragraphs 1-58, 105-113, and 114-117 as though set forth at length herein.

122.  By reason of the foregoing, Defendants have retaliated against Plaintiff PAYSON for having disclosed to a governmental agency a violation a law, rule or regulation which she

reasonable believed to be true and which she reasonable believed to constitute improper governmental action.

123. By reason of the foregoing, Defendants have violated Plaintiff PAYSON's rights to be free from retaliation pursuant to Section 75-b (2) (a) (ii) of the New York State Civil Service Law.

### AS AND FOR A FIRST CLAIM ON BEHALF OF LAURIE TYLER: RETALIATION IN VIOLATION OF THE REHABILITATION ACT, 29 U.S.C §Section 794 et seq.

124.  Plaintiff TYLER repeats and realleges Paragraphs 1-20(a), 59- 104(b) above as though set forth at length herein.

125.  TYLER engaged in activity which is protected pursuant to the terms of the Rehabilitation Act, 29 U.S.C. §794 et seq.

126. By subjecting her to an involuntary psychiatric examination, placing her on administrative leave, forcing her to take medical leave and thereby for forcing her to utilize most of the days in her sick bank, and assigning her to the most dangerous group of students in the school, all in retaliation for the foregoing protected activity, Defendants took adverse action against Plaintiff TYLER in such a way as to deter an ordinary person from exercising her rights under the Act.

127. By reason of the foregoing, Plaintiff has sustained damages in the form of lost sick days, damage to reputation, sever pain, suffering and mental anguish.

128.  By reason of the foregoing Plaintiff TYLER has sustained damages in an amount to be determined at trial but in no event less than $2,500,000.00

**AS AND FOR A SECOND CLAIM ON BEHALF OF LAURIE TYLER:**

**VIOLATION OF FIRST AMENDMENT RIGHT TO SPEAK OUT ON MATTERS OF PUBLIC CONCERN, PURSUANT TO 42 U.S.C. § 1983**

129.  Plaintiff TYLER repeats and realleges Paragraphs 1-20(a), 59-125 as though set forth at length herein.

130.  By reason of the foregoing, Defendants have violated Plaintiff TYLER'S First Amendment right to speak out on matters of public concern.

131.  By reason of the foregoing, Plaintiff TYLER has sustained damages in the form of lost sick days, damage to reputation, sever pain, suffering and mental anguish.

132.  By reason of the foregoing Plaintiff TYLER has sustained damages in an amount to be determined at trial but in no event less than $2,500,000.00

**AS AND FOR A THIRD CLAIM ON BEHALF OF LAURIE TYLER:**

**VIOLATION OF FIRST AMENDMENT RIGHT TO ASSOCIATION WITH UNION AND ADVOCACY ON BEHALF OF UNION AND ITS MEMBERS**

133.  Plaintiff TYLER repeats and realleges Paragraphs 1-20 (a), 59-129 as though set forth at length herein.

134.  By reason of the foregoing, Defendants have violated Plaintiff TYLER'S First Amendment right to association with a Union and to advocate on behalf of its members.

135.  By reason of the foregoing, Plaintiff TYLER has sustained damages in the form of lost back pay, front pay, decreased retirement and other benefits, damage to reputation, pain, suffering and mental anguish.

136.  By reason of the foregoing Plaintiff PAYSON has sustained damages in an amount to be determined at trial but in no event less than $2,500,000.00

WHEREFORE, Plaintiffs demand judgment in their favor against Defendants as follows:

ON PLAINTIFF PAYSON'S FIRST, SECOND, THIRD, AND FOURTH, CLAIMS FOR RELIEF: Compensatory damages in an amount to be determined at trial but in no event less than TWO MILLION, FIVE HUNDRED THOUSAND DOLLARS ($2,500,000.00);

ON PLAINTIFF PAYSON'S FOURTH CLAIM FOR RELIEF, REINSTATEMENT TO HER POSITION OF EMPLOYMENT NUNC PRO TUNC, with all associated benefits, including tenure and sick time;

ON PLAINTIFF TYLER FIRST, SECOND AND THIRD CLAIMS FOR RELIEF, compensatory damages in an amount to be determined at trial but in no event less than TWO MILLION FIVE HUNDRED THOUSAND DOLLARS ($2,500,000.00);

ON All CAUSES OF ACTION, AGAINST ALL DEFENDANTS, to the extent allowable by law, PUNITIVE DAMAGES in an amount to be determined at trial;

Together with ATTORNEYS FEES, costs and disbursements of this action; and

Such, other further and different relief as to the Court seems just and proper.


Dated:   February 8, 2016
             White Plains, New York


GOULD & BERG, LLP
By:  S/ *Jane Bilus Gould*
Jane Bilus Gould (JBG4510)
Attorneys for Plaintiff Diane Payson
and Laurie Tyler
222 Bloomingdale Road
White Plains, New York 10605
 (914) 397-1050

23